Grabau, Charles M., J.
INTRODUCTION
On August 30, 2007, a jury returned a verdict for the Plaintiff, Michael Brewster (“Brewster”), on Count *38 I of his Complaint for breach of contract against the Defendant, Arbella Mutual Insurance Company (“Arbella”). The jury awarded Brewster $50,000 in damages and issued an advisory verdict finding violations of the Consumer Protection Act, G.L.c. 93A, §§2 and 9.[1]
The parties are before the court on Brewster’s motion for an award of attorneys fees and costs for violations of G.L.c. 93A and G.L.c. 175, §1130.[2]
FINDINGS OF FACT
On or about June 14, 2005, Brewster’s 2004 Ford Explorer motor vehicle was stolen. Brewster submitted a Proof of Loss Claim form to Arbella on J une 20,2005. Brewster made a demand to Arbella for full payment under the applicable insurance policy provisions. He cooperated with Arbella’s claims representatives at all times and complied with all of the conditions under the terms of the policy with Arbella. On August 17, 2005, 64 days after Brewster submitted his Proof of Loss claim, Arbella denied the claim.
On October 7, 2005, Brewster submitted a settlement demand letter pursuant to G.L.c. 93A. Arbella had a statutory obligation to “effectuate prompt, fair and equitable settlements” of claims for which “liability has become reasonably clear.” G.L.c. 176D, §3(9)(f). Failure to effectuate a settlement of a claim in which liability is reasonably clear is an unfair settlement practice and also an unfair or deceptive act or practice under G.L.c. 93A. Bobick v. United States Fidelity and Guaranty, 439 Mass. 652, 659-60 (2003); Lazaris v. Metro. Prop. & Cas. Ins. Co., 428 Mass. 502, 502 (1998).
I find that Arbella’s liability for the property loss and the scope of Brewster’s damages were reasonably clear to Arbella’s claims representatives by the date that it received Brewster’s G.L.c. 93A demand letter. Arbella, however, failed to make a good faith offer of settlement. I further find that Arbella’s delay and refusal to pay the claim was an unreasonable act or practice and violated G.L.c. 175, §1130.
Arbella breached its insurance contract with Brewster by refusing to pay the full loss under Part 9 and Part 10, minus the applicable deductibles, to Brewster and to the loss payee.[3] Furthermore, I find that Arbella’s handling of Brewster’s claim was an unfair or deceptive act or practice in violation of G.L.c. 93A, §2 and G.L.c. 176D, sec 3(9).[4] Arbella’s failure to settle and pay the claim forced Brewster to retain counsel and commence the instant litigation. Siegel v. Berkshire Life Insurance Company, 70 Mass.App.Ct. 318 (2007).
I further find that Arbella is responsible for the intentional spoliation of evidence.[5] Arbella’s expert, James Miller (“Miller”), of Accurate Lock and Safe was hired as an expert to examine Brewster’s Ford Explorer. On or about June 28 and June 30, 2005, Miller examined the vehicle for evidence of fraud. Miller received permission from Arbella to examine the locking system, to pull out the dashboard and to examine the remote starter system. Miller destroyed valuable evidence to reach the remote starter. Arbella’s claims representatives knew that Miller would alter and or destroy evidence and never communicated this to Brewster’s attorney.
Massachusetts law mandates that “every contract imposes upon each parly a duty of good faith and fair dealing in its performance and its enforcement.” Larson v. Larson, 37 Mass.App.Ct. 106, 109 (1994). This is called the covenant of good faith and fair dealing. The covenant of good faith and fair dealing applies to all contracts including those in a commercial context between sophisticated business people. Anthony’s Pier Four, Inc. v. HBC Associates etal, 411 Mass. 451, 583 (1991). Arbella breached the covenant of good faith and fair dealing by its actions of delaying and later denying Brewster’s claim.
Based on Arbellas’ violation of G.L.c. 93A, §§2 and 9 and G.L.c. 176D, §9, I double the juiy’s damage award of $50,000.00 to $100,000.00, plus award plaintiff his costs, interest and attorneys fees.
Attorneys Fees
As I presided over the jury trial in this case, I have first hand knowledge of the nature of the case and the factual and legal issues presented by the various claims.
In calculating an attorneys fee award under G.L.c. 93A, I must consider the fair market rate for time reasonably spent by the attorney in preparing and litigating the case. I may take into consideration how long the trial lasted, the nature of the case and the issues presented, the difficulty of the legal and factual issues involved, the damages involved, the result obtained and the degree of competence demonstrated by the attorney.
I have reviewed the Affidavit submitted by Brewster’s attorney, George F. Leahy, regarding the time spent and hourly rate charged in connection with litigating Brewster’s contractual rights against Arbella. Based on the factors outlined above, I find that Attorney Leahy’s customary billable rate of $300 per hour to be fair and reasonable. Attorney Leahy has considerable experience in civil litigation as noted in his curriculum vitae. During the trial, he demonstrated his knowledge and skill as a trial lawyer. Attorney Leahy was well prepared on the issues that arose during the trial. I conclude that the $22,554.46 requested by Attorney Leahy as an award for attorneys fees is fair and reasonable. However, during the final arguments, Attorney Leahy outlined the Plaintiffs case for a damage award. Attorney Leahy stated in part the following:
Take a look at the damage component. The car is worth $23,000. The sales tax in Massachusetts is five percent, which is $1,500, the attorneys fees *39 running up to the start of the trial on the first day were $11,000. Three hundred an hour is what I charge.
I find that Attorney Leahy argued that Brewster’s damages included at least $11,000 expended by his client in prosecuting his civil claim against Arbella up to the first day of the trial. I also find that the damages awarded by the jury included this amount. Therefore, I have deducted $11,000 from the $22,554.46 requested by Attorney Leahy and reach an award of attorneys fees in the amount of $11,554.46.
Costs[6]
Massachusetts Rules of Civil Procedure 54(d) states that, “Except when express provisions therefore is made either in a statute of the Commonwealth or in these rules, costs shall be allowed as of course to the prevailing party I award Brewster the cost for his expert witness, Charles Wilson, of $750.00 and deposition costs of $321.60.
The Interest Calculations
Finally, Brewster is entitled to prejudgment interest at 12% per annum on the single damages ($50,000), from the date of breach, August 17, 2005. The interest on the punitive damages found by the court ($50,000), are to calculated from the date of the Judgment. As to the attorneys fees and costs, the statutory interest is to be calculated from the date of the Judgment.
ORDER
Having found that the Defendant, Arbella Mutual Insurance Company, is liable under G.L.c. 93A for double damages, and having allowed plaintiffs request that reasonable attorneys fees and costs be assessed against the Defendant, it is hereby ORDERED that judgment enter for Plaintiff, Michael Brewster, in the amount of $100,000, plus costs in the amount of $1,071.60. Attorneys fees are awarded in the amount of $11,554.46.

 The three advisory questions asked of the jury were: Did Arbella Mutual Insurance Company engage in an unfair and/or deceptive act or practice? Did the plaintiff, Michael Brewster, suffer damages as a result of Arbella Mutual Insurance Company’s unfair and/or deceptive act or practice? Was the act or acts committed by Arbella Mutual Insurance Company in your response to Q.6, a willful or knowing unfair or deceptive act or practice in violation of G.L.c. 93A, the consumer protection statute? The jury answered “Yes” to all three questions. I adopt the jury’s advisory verdict of August 30, 2007 under G.L.c. 93A, §§2 and 9.

 See Papers 35, 36 and 38.

 Arbella never paid Quincy Municipal Credit Union, the loss payee. As of October 1, 2005, the loan payoff amount on the Ford Explorer was $17,056.22.

 General Laws c. 176D, §3. Unfair methods of competition in insurance and unfair or deceptive acts or practices provides in pertinent part as follows: (9) Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions: (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

 ‘The doctrine of spoliation ‘is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results.’ Keene v. Brigham and Women’s Hosp., Inc., 439 Mass. 223, 234 (2003). See Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998) (negligent destruction of evidence is sufficient to constitute spoliation). It has been ‘implicitly recognized that persons who are actually involved in litigation (or know that they will likely be involved) have a duly to preserve evidence for use by others who will also be involved in that litigation.’ Fletcher v. Dorchester Mut Ins. Co., 437 Mass. 544, 549-50 (2002).” Westover v. Leiserv, Inc., 64 Mass.App.Ct. 109, 112-13 (2005).

 The clerk shall assess costs for the filing fee, summons, if any, and service of process. See paper 35.